UNITED STATES *v.* E. B. MILLER ASSOCIATES, INC., J. M. RODGERS Co. (No. 4834)[1]

[1] C. A. D. 603.

United States Court of Customs and Patent Appeals, December 8, 1955

*Warren E. Burger*, Assistant Attorney General and *Richard E. FitzGibbon*, Chief, Customs Section, for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellees.

*Lamb & Lerch* (*David A. Golden* of counsel) *amici curiae*.

[Oral argument October 7, 1955, by Mr. FitzGibbon, Mr. Golden, and Mr. Schwartz]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, in conformity with its decision, Abstract No. 58429, sustaining a protest of the importer against the collector's assessment of duty on the importation consisting of miniature locomotives, and parts therefor, and miniature coaches, at the rate of 50 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930, as modified by T. D. 52739, supplemented by T. D. 52820, as toys, and parts thereof, not specially provided for, and holding that the involved miniature locomotives and parts therefor, are properly dutiable at the rate of 13¾ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified, and that the involved coaches are properly dutiable at the rate of 22½ per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified, as claimed by appellee.

The pertinent parts of the statutes involved are as follows:

Par. 1513. * * * and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. As used in this paragraph the term "toy" means an article chiefly used for the amusement of children, whether or not also suitable for physical exercise or for mental development. The rate provided for in this paragraph shall apply to articles enumerated and described herein, whether or not more specifically provided for elsewhere in this Act. [The rate of duty for parts of toys was reduced from 70 per centum to 50 per centum under T. D. 52739 and T. D. 52820.]

Par. 353. * * * articles having as an essential feature an electric element or device, * * * all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem. [The rate of duty under the above provision was reduced from 35 per centum ad valorem to 13¾ per centum ad valorem under T. D. 52739 and T. D. 52820.]

Par. 397. Articles or wares not specially provided for * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc,

aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem. [The rate of duty under this provision was reduced to 22½ per centum ad valorem under T. D. 51802.]

It is well settled law that the collector's classification is presumed to be correct and when an importer protests such classification he has the burden of proving that the collector's classification is wrong and also of proving what classification is correct. Therefore, in the case at bar, we must presume the collector's classification to be correct; that the imported merchandise consists of toys chiefly used for the amusement of children; and that the importer has the burden of proving that such merchandise does not consist of toys and is not chiefly used for the amusement of children.

The importer introduced the testimony of one witness, Mr. Edward B. Miller, who testified that he represents a number of manufacturers, and also is "head of a corporation which was organized to import hobby goods"; that he has been in the hobby industry since 1933, and has dealt in model trains since 1941; that he first started importing model trains in 1951; that appellee's Collective Exhibit 101 is a sample of the involved Scale Model King Class Locomotives complete with electric motor which are made to run on "HO scale track," and are operated by an electric motor "contained in the tender," which makes contact with the current "through the two rails of the track by pick-up points underneath the tender;" that HO track is scaled 3½ millimeters to the foot, and conforms to gauge specifications of the National Model Railroad Association as to "the specifications of the height of the rail, the width of the rail head, and the general profile outline of the rail that is used in the track," and that electric current passes in the track through "two brass rails which are mounted to the fiber strips" that act as an insulation between the rails; that appellee's Exhibit 102 is a locomotive, described on the invoice as a scale model prairie tank locomotive, complete with electric motor; that it runs on "HO scale track and is supplied with electric current" by means of two pick-ups underneath the locomotive; that appellee's Collective Exhibit 103 is a locomotive with tender which is described on the invoices as "Streamline S. R. Scale Model Locos complete with Elec. Motor" and which operates by electric current that is picked up from the two rails of the track by pick-ups underneath the tender, and is made to "HO scale"; that appellee's Exhibit 104 is a miniature coach which is described on invoices as "Scale Model Elec. Insulated Wagon Lit Coaches," and which have "nothing electrical except that the wheels are insulated so as not to short-circuit the track, and when used can be pulled by any of the involved locomotives; that the invoice item "Scale Model Elec. Insulated Pullman Coaches" is "an English type of coach," substantially the same as the articles represented by appellee's Exhibit 104; that the invoice item "Tender

for Elec. Scale Model Locos" (on base only) "is a replacement part" for either of the tenders attached to the locomotives (appellee's Collective Exhibits 101 and 103); that there was included in the importation several items of repair or replacement parts for the articles hereinabove referred to, and several items covering electric switches which are "sample parts" made "for the operation of these units in England."

Mr. Miller further testified that the merchandise, which is painted and marked, is ready for use and is sold as a finished article as imported; that the markings are the identical markings which are on the prototype locomotive, tender, and coach.

It was stipulated that Exhibits 101 through 104 are composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer and that they are similar in all material respects to plaintiff's Exhibit 1 in protest 157820–K, which was decided in *International Models, Inc., Victory Shipping Co., Inc.* v. *United States,* C. D. 1541, except that Exhibits 101 through 104 are imported completely finished and painted, whereas Plaintiff's Exhibit 1 in C. D. 1541 was imported in an unfinished, unpainted condition, and that Exhibits 101 through 104 are ready to run on the tracks in the imported condition.

The record in protest 157820–K, *supra,* decided by the Customs Court in C. D. 1541 was introduced in evidence. In that case there was involved an issue similar to the one now before us. In that case the imported merchandise consisted of miniature locomotives, (approximately 3½ inches in length) which were unpainted, but when used in a railroad layout were finished to simulate the particular locomotive of which it was a model by being painted with the appropriate colors and showing "the number of the locomotive as used by the railroad company and also the decalcomania showing what railroad it is from," and which was identified as an "0–4–0 switcher" and was described as a model of the type that "is used in switch yards for changing freight around or even on sleepers, taking them around from track to track." The importer's evidence was to the effect that the so-called "switcher" was chiefly used by adults who were engaged in model railroad building as a hobby, and that, in addition to such principal use, the merchandise was also used for advertising purposes and by moving picture and television studios for theatrical effects.

The testimony in behalf of the Government was to the effect that merchandise similar to the imported merchandise (Miniature locomotives manufactured by A. C. Gilbert & Co.), which is HO scale and operates on HO gauge track, as the imported merchandise does, was chiefly used as toys for the amusement of children. In fact, the

Customs Court in its decision in the instant case in referring to the Gilbert items of merchandise which were Government exhibits in the incorporated case, states, "There was also before us, in the incorporated case, much testimony, introduced by defendant, concerning types of locomotives of HO gauge, that we found were designed and chiefly used for the amusement of children." The legal phase of the Custom Court's decision in said C. D. 1541 invoked the well-established principle that where "chief use" is the determining factor in classifying merchandise, it is the chief use of the class or type or merchandise to which the importation belongs that is controlling.

The testimony of Mr. Miller, the only witness to testify in the instant case, is not of much benefit in resolving the issues before us. He identified the various exhibits and described them as above set forth, and testified that he is in the "hobby" business, representing a number of manufacturers whose goods are sold to the hobby trade, has dealt in model trains since 1941 and first started importing model trains in 1951, but there is no testimony as to the volume of his importations or the volume of his business, although he did testify that he attended and exhibited "so-called model railroad trains," HO gauge trains, at the American Toy Fair which was held from March 8th to March 17th, 1954 at the "Hotel New Yorker, Hotel McAlpin and the Fifth Avenue Building."

An examination of the testimony and the exhibits in the incorporated case clearly shows that the merchandise here involved is very similar to the merchandise introduced in evidence by the Government in the incorporated case which the Customs Court in that case correctly found to be chiefly used as toys for the amusement of children. Both are "HO scale," both are completely finished, painted, and ready to run on "HO gauge" track.

In the incorporated case the importer's witnesses testified that they had seen Exhibit 1 and similar merchandise used and operated only by adults in Hobby Clubs, in displays and in homes and basing their opinions on their observations and experiences, testified that Exhibit 1 and similar merchandise were chiefly used by adults. They further testified that they had never seen Exhibit 1 and similar merchandise used or operated in homes as toys for the amusement of children, but their testimony clearly shows that they had not been in many homes where there were children and therefore they had little opportunity to actually see or know whether such merchandise was used or operated by children or for the amusement of children.

In the incorporated case the testimony of the Government's witnesses shows they had been in more homes than the importer's witnesses, and had seen Exhibit 1 or similar merchandise used and operated in homes for the amusement of children; and basing their opinions on their observations and experiences, they testified that Exhibit 1 and similar articles are toys chiefly used for the amusement of children.

We have carefully examined the entire record, including the record in the incorporated case, and do not think the evidence is sufficient to overcome the presumption of correctness which attaches to the collector's classification.

The judgment of the Customs Court is *reversed*.

WORLEY, Judge, concurs in the conclusion.

JACKSON, Judge, retired, participated herein for COLE, Judge, who participated below.